1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| KURT ZIEGLER and DANIEL BRADY, individually and on behalf of all others similarly situated,<br><br>                                       Plaintiffs,<br><br>    v.<br><br>GW PHARMACEUTICALS, PLC; JUSTIN GOVER; GEOFFREY GUY; CABOT BROWN; DAVID GRYSKA; CATHERINE MACKEY; JAMES NOBLE; ALICIA SECOR; and LORD WILLIAM WALDEGRAVE,<br><br>                                       Defendants. | Case No. 21-cv-01019-BAS-MSB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>**(ECF No. 37)** |

21
22
23
24
25

Now pending before the Court is a Motion for Preliminary Approval of a class action settlement.  (Mot., ECF No. 37.)  The Court finds this motion suitable for determination on the papers submitted without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons herein, the Court **GRANTS** Lead Plaintiffs' Motion for Preliminary Approval of the proposed class action settlement.

26

**I.**  **BACKGROUND**

27
28

On May 27, 2021, Lead Plaintiff Kurt Ziegler filed this federal securities class action against GW Pharmaceuticals, PLC ("GW") and the members of GW's board of directors.

(Complaint ¶ 1, ECF No. 1.)[1]  In his Complaint, Plaintiff alleges Defendants made materially false and misleading statements within a Definitive Proxy Statement ("Proxy") to convince GW shareholders to vote in favor of a merger with Jazz Pharmaceuticals, PLC ("Jazz").  (*Id.* ¶ 3.)

This Proxy was then filed with the Securities and Exchange Commission ("SEC") and disseminated to GW shareholders.  (*Id.*)  The merger agreement closed on May 5, 2021.  (*Id.* ¶ 8.)  Plaintiff alleges the Proxy was "materially false and misleading with respect to GW's financial projections and operations, the value of GW shareholders' stock, and the fairness of the Merger Consideration."  (*Id.* ¶ 3.)  Plaintiff claims that Defendants in turn violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as well as SEC Rule 14a-9.  (*Id.* ¶ 1.)

On August 3, 2021, Plaintiff Kurt Ziegler moved to have Daniel Brady and himself appointed as Lead Plaintiffs.  Plaintiff also sought approval of Monteverde & Associates PC ("Monteverde") and Kahn Swick & Foti LLC ("KSF") as Lead Counsel.  (ECF No. 7.)  The Court granted both requests on January 18, 2022.  (ECF No. 8.)

Following this approval, Lead Plaintiffs filed their Amended Complaint, alleging that Defendants collectively violated Section 14(a) of the Exchange Act, as well as Rule 14a-9 through the misleading Proxy that led to the merger.  (Am. Compl. ("AC"), ECF No. 11.)  Lead Plaintiffs further alleged that Defendants individually violated Section 20(a) of the Exchange Act through those material misstatements and omissions enclosed in the Proxy.  (*Id.*)  Defendants filed a motion to dismiss, which was fully briefed on September 1, 2022.  (ECF Nos. 21–24.)

The following day, the parties filed a joint motion to stay proceedings to participate in a mediation led by Robert A. Meyer of JAMS on December 7, 2022.  (ECF No. 25.)  The Court agreed to stay proceedings until the provided mediation date.  (ECF No. 26.)  Although the parties did not reach agreement on the day of mediation, they continued to

---

[1] Capitalized terms not defined in this Order have the meaning ascribed to them in the Stipulation of Settlement.

negotiate through Mr. Meyer, and ultimately reached an agreement to settle the litigation on December 28, 2022. (Mem. 9, ECF No. 37-1.) The parties executed a term sheet memorializing the key terms of the Settlement on December 29, 2022. (*Id.*)

The parties penned this Stipulation on March 16, 2023. (Stipulation of Settlement ("SS"), Ex. 1 to Decl. of David E. Bower ("Bower Decl."), ECF No. 37-3.) This Stipulation sets forth the full terms of the proposed Settlement resolving the claims of the Class, including a Settlement Amount of $7,750,000 to be paid into an Escrow Account and distributed to authorized Class Members in accordance with the Plan of Allocation described fully in the Notice. (*Id.* ¶¶ 1.29, 2.3)

## II.   **PROPOSED SETTLEMENT**

<u>Settlement Class</u>.  The Stipulation of Settlement applies to Class Members defined as "all record holders and all beneficial holders" of GW American Depositary Shares ("ADS") who "purchased, sold, or held" ADS at any time during the period from March 10, 2021 to May 5, 2021 (the date the Merger closed). (*Id.* ¶ 1.30.) This definition of Class Members extends to "any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees." (*Id.*)

<u>Settlement Fund</u>.  To settle this action, Defendants agree to deposit the Settlement Amount of $7,750,000 into an Escrow Account.  (*Id.* ¶ 2.1.)  The Escrow Agent (Huntington Bank, N.A. or another banking institution designated by Lead Plaintiffs) shall deposit the Settlement Amount, plus any accrued interest, in a separate Escrow Account maintained by the Escrow Agent. (*Id.* ¶¶ 1.11, 2.1.)  The amount will be distributed as follows:

(i)    Approximately $2.58 million for attorneys' fees, plus expenses not to exceed $50,000;

(ii)   Approximately $150,504.00 for administrative costs; and

(iii)  Each Authorized Claimant that submits a valid and timely Proof of Claim will receive distribution from the Net Settlement Fund on a pro rata basis.

21cv1019

(Mem. 24; Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Ex. A-1 to Bower Decl. 58, 62, ECF No. 37-3.)

The average distribution to each Authorized Claimant, assuming all holders of ADS in the Settlement Class submit a valid and timely Proof of Claim, will be approximately $0.25 per ADS owned (prior to the payment of Court approved fees and expenses). (Mem. 13; Notice 62.) No distributions will be made to Claimants who would receive a distribution of less than $10.00. (Mem. 13; Notice 62.)

Class Notice. The parties agree that the firm of Rust Consulting, LLC will serve as the Claims Administrator and is tasked with supervising and administering the notice procedure, as well as the processing of claims. (SS ¶ 1.4.)

Objecting or Requesting Exclusion. Class Members can object to the Settlement by writing to Lead Counsel, Defendants' Counsel, and the Court. (Notice 66.) They must explain why they oppose the Settlement, the Plan of Allocation, the request for attorneys' fees, and/or the expenses of Lead Plaintiffs before the response deadline, as set forth in the Notice of Class Action Settlement. (*Id*.) An objecting Class Member must also include "copies of documents demonstrating such holding(s), purchase(s), acquisition(s) and/or sale(s)." (*Id*.) The objection and supporting papers must be submitted to the Court and both mailed and emailed to each of the addresses provided in the Notice of Class Action Settlement. (*Id*.) The objection and documentation must be received no later than twenty-one days before the Fairness Hearing. (Ex. A to Bower Decl. ¶ 21, ECF No. 37-3.)

Class Members who wish to be excluded from the Settlement Class must send a letter by mail stating as such and including the matter name and docket number: *Kurt Ziegler, et al. v. GW Pharmaceuticals, PLC, et al.*, C.A. No. 3:21-cv-01019-BAS-MSB. (Notice 65.) Class Members seeking exclusion must provide the following information: (a) name; (b) address; (c) telephone number; (d) amount of GW ADS purchased, sold, or held at any time during the period from and including March 10, 2021, through and including May 5, 2021; and (e) a statement that the Class Member wishes to be excluded from the Settlement Class. (*Id*.) Class Members seeking exclusion must mail their

- 4 -

exclusion request by First-Class Mail such that it is received no later than twenty-one calendar days before the Fairness Hearing. (Ex. A to Bower Decl. ¶ 19.) If a Class Member asks to be excluded, then they will not receive any settlement payment, and cannot object to the Settlement. (*Id.*) An excluded Class Member will not be legally bound by anything that happens in this Litigation. (*Id.*)

## III.   **LEGAL STANDARD**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

For a class to be certified, a plaintiff must show that all the prerequisites of Federal Rule of Civil Procedure ("Rule") 23(a), and the requirements of at least one of the categories under Rule 23(b), have been met. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1125 (E.D. Cal. 2018) (quoting *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 471 (E.D. Cal. 2009)).

The court may approve a proposed settlement only if the court finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Where the parties reach a settlement prior to certification, courts apply a "higher standard of fairness" and make a "more probing inquiry than may normally be required under Rule 23(e)." *Id.*

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.

21cv1019

Supp. 2d 1078, 1079 (N.D. Cal. 2007).   "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."   *Class Plaintiffs*, 955 F.2d at 1276.

## IV.   ANALYSIS

### A.   Class Certification

The parties seek class action certification for settlement purposes only.   The Court first analyzes the prerequisites of Rule 23(a), which requires that numerosity, commonality, typicality, and adequacy all be satisfied.   Fed. R. Civ. P. 23(a).

The Court then analyzes the requirements of Rule 23(b).   Although only one requirement must be satisfied, the Court analyzes two grounds on which Lead Plaintiffs may succeed: predominance and superiority.   Fed. R. Civ. P. 23(b).

"These factors must be considered in light of the reason for which certification is sought—litigation or settlement—which 'is relevant to a class certification.'"   *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 619 (1997)).   Hence, "in deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'"   *Id.* (quoting *Amchem*, 521 U.S. at 620).

### 1.   Numerosity – Rule 23(a)(1)

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   Generally, this requirement is satisfied when the class contains 40 or more members.   *See Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 501 (S.D. Cal. 2020).   Here, Lead Plaintiffs estimate that there were approximately 30 million GW ADS during the Settlement Class Period that were held by "hundreds to thousands of holders" across the United States. (Mem. 17.)   In a case such as this, where a corporation has millions of shares trading on a national exchange, a court may infer that the numerosity requirement is met.   *See In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).   Therefore, the Court finds the numerosity requirement satisfied here.

### 2. Commonality – Rule 23(a)(2)

Commonality requires that there be "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*.

Lead Plaintiffs assert that the Settlement Class Members all held GW ADS during the Settlement Class Period, and therefore all share common questions of law and fact. (Mem. 18.) Particularly, in holding these GW ADS, Class Members were all subject to the claimed Exchange Act violations when the alleged misleading and materially false statements were disseminated to them. (*Id*.) Given the Ninth Circuit holding that a class of defrauded purchasers is united by similar misrepresentations, the Court agrees and finds the commonality requirement is satisfied for the proposed Settlement Class. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

### 3. Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiffs' claims must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is "permissive" and requires only that the named plaintiffs' claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic*

*Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Lead Plaintiffs allege that they and all Settlement Class Members suffered the same Exchange Act violations as a result of Defendants' alleged misstatements and misrepresentation.  (Mem. 18.)  Because Lead Plaintiffs' and the Settlement Class Members' claims arise from the same alleged conduct of Defendants, the Court finds the typicality requirement is satisfied.

### 4.  Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

There is no indication that Lead Plaintiffs and Lead Counsel have a conflict of interest with the Class or between themselves.  Lead Plaintiffs state that they "have always been committed to obtaining the best possible result for the Settlement Class, as evinced by the history of this Litigation . . . ."  (Mem. 19.)  Lead Counsel also has invested both considerable time and resources in prosecuting this action.  (*Id.*)  Accordingly, the Court finds Lead Plaintiffs and Lead Counsel will fairly and adequately protect the interest of the Class.

### 5.  Predominance and Superiority – Rule 23(b)(3)

#### a.  Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.").

Here, Lead Plaintiffs claim that "questions common to all Settlement Class Members substantially predominate over any individualized questions." (Mem. 19.) They assert the following common issues: "(1) whether the Proxy contained materially false or misleading statements; and (2) whether the alleged material misrepresentations and omissions caused recoverable losses." (*Id.*) Lead Plaintiffs further claim that the same alleged course of conduct by Defendants is the basis of all Settlement Class Members' claims. As a result, Lead Plaintiffs allege that the presence of numerous and common issues arising from Defendants' alleged actions are at the core of this Action, and therefore, predominate over any individualized issues. (*Id.* at 20.)

The Court agrees that there are significant, common issues that predominate and provide a "clear justification" for resolving those questions in a single adjudication. *See Hanlon*, 150 F.3d at 1022; *Vinole*, 571 F.3d at 944. Hence, the Court finds the predominance requirement is satisfied.

### b. Superiority

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (quoting Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is

superior "if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).  The following factors are relevant to this analysis: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Lead Plaintiffs argue class treatment is superior to other methods of adjudication because it promotes judicial economy by allowing Class Members to obtain "prompt, certain relief through well-defined administrative procedures assuring due process." (Mem. 20.)  The alternative, Lead Plaintiffs argue, means pursuing costly, individualized litigation which would make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief.  (*Id.*)  The Court agrees and finds the superiority requirement is met for this Settlement Class.

## B.    Preliminary Fairness Determination

Having provisionally certified the Settlement Class, the Court must next make a preliminary determination of whether the Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety."  *Id.*

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations," "has no obvious deficiencies," does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal quotation marks and citations omitted).

Relevant factors to this determination, among others, include:

[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Court addresses the relevant factors in further detail below.

### 1. Strength of the Plaintiffs' Case and Risk of Further Litigation

Lead Plaintiffs and Class Members face significant obstacles and risk in pursuing this litigation to trial. One such obstacle is the Defendants' Motion to Dismiss. Lead Plaintiffs maintain that the Proxy disseminated to GW shareholders contained material misstatements and omissions concerning GW's value "in connection with a set of allegedly unreasonably low financial projections for 2021-2035 . . . that were used to frame the Acquisition consideration as 'fair' and obtain a fairness opinion from GW's financial advisor." (Mem. 15; AC ¶¶ 75–103.) Lead Plaintiffs claim that these projections were used in lieu of an earlier and higher set of projections "that were prepared in the ordinary course of GW's business and without knowledge of Jazz's offer." (Mem. 15.)

Defendants have vehemently denied these claims in their Motion to Dismiss, arguing that the projections and related statements were "forward-looking and accompanied by cautionary language." (ECF No. 21.) Additionally, Defendants assert that Lead Plaintiffs failed to allege loss causation. (*Id*.) Thus, Defendant's Motion to Dismiss presents a significant hurdle to Lead Plaintiffs' and Class Members' recovery.

Even if Lead Plaintiffs survived the Motion to Dismiss, there remains the looming expense and risk of prosecuting the claims successfully through a hearing on class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals. Further, the Court recognizes that there is no assurance that Lead Plaintiffs could prove loss causation or damages in excess of the Settlement Amount at trial. Having considered the strength of the Class's case and the risks involved in further

litigation, the Court finds the foregoing considerations weigh in favor of approval of the Stipulation of Settlement.

### 2. Amount of Proposed Settlement

Common Fund. Preliminary approval of a settlement is appropriate if the settlement "falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. To determine whether a settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Id.* at 1080. While courts do not need "a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action," *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012), courts "[have] more than once denied motions for approval where the plaintiffs 'provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).

Here, Lead Plaintiffs assert that the total amount of damages Class Members might recover if their claims prevailed at trial would exceed $600 million. (Mem. 16.) This information allows the Court to compare the settlement amount to the relief the class could expect to recover at trial. *See Haralson*, 383 F. Supp. 3d at 969. The Court acknowledges that in comparison, the Stipulated Settlement Amount is a small fraction of the claimed $600 million in damages if Lead Plaintiffs prevailed at trial. However, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Since Class Members are avoiding this uncertainty and will receive an "immediate recovery" rather than "the mere possibility of relief in the future, after protracted and expensive litigation," the Court finds the settlement amount weighs in favor of preliminary approval. *See id.*

The Court, however, has some lingering reservations about the amount of recovery. Lead Plaintiffs' assertion that the Stipulated Settlement Amount meets the median settlement value in securities class actions is unpersuasive. Lead Plaintiffs provide this information in a vacuum with no consideration as to the content and context of other securities cases included in this median. They provide nothing to indicate that these cases are similarly situated, aside from the fact that they pertain to securities matters. Therefore, the Court requires Lead Plaintiffs to address the Settlement Amount in greater detail in their final approval motion.

Attorneys' Fee Provision. The Stipulation of Settlement contemplates an award of attorneys' fees and costs to Lead Counsel. (SS ¶ 6.) "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963. The Ninth Circuit has also warned courts to look for indicia of possible collusion, including a "kicker" provision—where any fees not awarded revert to the defendant—and a "clear sailing agreement"—where the defendant agrees to not object to fees up to a certain amount. *See Bluetooth*, 654 F.3d at 947.

The Stipulation of Settlement explains that "Defendants do not have a reversionary interest in the Net Settlement Fund." (SS ¶ 5.7.) Furthermore, it dictates that any remaining balance in the Net Settlement Fund shall be reallocated on a pro rata basis amongst Authorized Claimants who cashed the checks in the initial distribution and who would receive a minimum of $10.00. (*Id*. ¶ 5.3(h).) In other words, the Stipulation of Settlement does not contain a kicker provision, and any fees not awarded will be made to benefit the Class. *See Bluetooth*, 654 F.3d at 947. Additionally, the Court finds no indication of a "clear sailing agreement."

21cv1019

The Court notes an award of $2.58 million would be approximately 33.3% of the gross settlement amount. (*See* Mem. 24.)  Generally, when applying the percentage of recovery method to determine fees, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award." *Pac. Enters.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  That said, fees often range between "20% to 33 1/3% of the total settlement value." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Therefore, although the anticipated fee award of 33.3% would exceed the benchmark, it still may be a reasonable award.

Even so, the Court will further scrutinize the fee award because the earlier a case settles, the greater the concern that a percentage award may amount to a windfall for counsel.  *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that the case was settled early in the litigation supports the district court's ruling [not to award class counsel's 25 percent fee award request because] the 25 percent benchmark of the percentage-of-the-fund approach might very well have been a 'windfall.'").  Thus, in order "to ensure a fair and reasonable result," the Court will require Class Counsel to submit their billing records and use the lodestar method to cross-check the fee award at final approval.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 668 (E.D. Cal. 2008).

Class Representative Payment.  Lead Plaintiffs seek service awards not exceeding $10,000. (Mem. 13–14.)  To evaluate the fairness of a class representative payment, courts consider "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation, . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Lead Plaintiffs seek these service awards pursuant to 15 U.S.C. § 78u-4(a)(4) for their representation of the Settlement Class. (Mem. 13–14.)  They insist that such an award

- 14 -

would "not constitute inequitable treatment of class members." (*Id.* at 14.)   Although service awards as high as $10,000 have been permitted, Lead Plaintiffs do not demonstrate significant time and effort expended to support this litigation.  *See Todd v. STAAR Surgical Co.*, No. CV 14-5263 (GJSx), 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017).  Rather, Lead Plaintiffs broadly assert that their representation of the Settlement Class is enough to establish their claim to such an award.

The Court will preliminarily approve the service payment in the amount sought, but Lead Plaintiffs must further explain at the final approval stage why they are entitled to a service award in the amount requested.

### 3.  Extent of Discovery Completed and the Stage of Proceedings

The court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").  "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527.  But formal discovery may not be necessary where "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for lead counsel to make an informed decision about settlement).

Lead Plaintiffs state this Settlement was secured through "extensive investigation, consultation with valuation experts, and a comprehensive mediation process . . . ." (Mem. 7.) Although no formal discovery phase was entered, Lead Plaintiffs conducted "extensive review of GW's corporate filings and publicly available information about its drug

candidates, financial press coverage concerning GW and the transaction, and the backgrounds of each of the Individual Defendants." (*Id.* at 8.) Additionally, on September 2, 2022, both parties moved to temporarily stay proceedings to participate in a mediation session with Robert A. Meyer of JAMS. (ECF No. 25.) From there, the parties attended a full-day, in-person mediation on December 7, 2022, and continued negotiating with Mr. Meyer until December 28, 2022. (Mem. 9.) Given this information, the Court finds this factor weighs in favor of preliminary approval of the Settlement Agreement.

### 4. Experience and Views of Counsel

Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give "great weight" to their recommendations. *Nat'l Rural*, 221 F.R.D. at 528; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Therefore, the plaintiffs' counsel's recommendations "should be given a presumption of reasonableness." *Pemberton v. Nationstar Mortgage, LLC*, No. 14-cv-01024-BAS-MSB, 2019 WL 13162731, at *5 (S.D. Cal. Oct. 9, 2019) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Lead Counsel has significant experience with securities matters, securities class actions, and advocating for shareholder rights. (Monteverde Resume, Ex. 3 to Bower Decl., ECF No. 37-5; KSF Resume Ex. 4 to Bower Decl., ECF No. 37-6.) Each of the Lead Counsel firms has an extensive track record of working on behalf of shareholders to secure them substantial monetary recoveries. (Monteverde Resume; KSF Resume.) Monteverde is recognized as a distinguished securities firm and was listed in the Top 50 of the 2018-2022 ISS Securities Class Action Service Report, which recognized the substantial settlements achieved by Monteverde. (Monteverde Resume 3.) KSF was ranked in the Top 10 of the 2022 ISS Securities Class Action Service Report and also has secured significant settlements for shareholders. (KSF Resume 13–14.)

Based on their evaluation of the factual and legal issues in this case, Lead Counsel believe "that the Settlement set forth in this Stipulation confers substantial benefits upon

the Settlement Class" and is in the Settlement Class's best interest.  (SS 6.)  Further, Lead Plaintiffs and Lead Counsel have "taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in any litigation."  (*Id*.)  Accordingly, giving the appropriate weight to Lead Counsel's recommendation, the Court concludes this factor also weighs in favor of preliminary approval.[2]

### C.    Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).  *Id.*  "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

As previously discussed, the parties agree that the firm Rust Consulting, LLC will serve as Claims Administrator.  (SS ¶ 1.4.)  The proposed Notice describes the litigation, the terms of the Settlement Agreement, the manner in which claims will be calculated, and each Class Member's rights and options under the settlement.  (*See* Notice 59–70.)

Additionally, in securities class actions the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that the notice provide the following information: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined

---

[2] The Court will consider a related factor—the reaction of the class to the Settlement Agreement—at the final approval stage after Class Members have had an opportunity to weigh in on the Settlement Agreement.

in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

Here, the proposed form of notice attached as Exhibit A-1 to the Stipulation of Settlement summarizes the parties' claims and contentions and explains the proposed Settlement and plan of allocation, including the recovery amount to each class member if 100% of the Settlement Class submits a claim.  (Notice 62.)  It explains the amount of the Settlement—$7,750,000—to be distributed to the Settlement Class; the average distribution per share (distributed on a pro rata basis); attorneys' fees (sought at approximately $2.58 million) and expenses (capped at $50,000) sought; the name, telephone number and address of representatives of Plaintiffs' Lead Counsel who will be reasonably available to answer questions from Settlement Class Members regarding the notice; the Settlement Class Members' right to object to the Settlement or seek exclusion from the Settlement Class; and the reasons why the parties propose the Settlement.

Having reviewed the proposed notice, the Court finds that the method and content of the notice complies with due process, Rule 23, and the PSLRA; the notice is the best notice practicable under the circumstances; and the notice shall constitute due and sufficient notice to all persons entitled to notice of the settlement.  Therefore, the Court approves the form and content of the proposed notice as set forth in Exhibit A-1 to the Stipulation of Settlement.

21cv1019

## V.  **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Lead Plaintiffs' Motion for Preliminary Approval of class action and hereby **ORDERS** the following:

(1) Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies a class for settlement purposes only.

(2) The Class shall consist of "all record holders and all beneficial holders" of GW American Depositary Shares ("ADS") who "purchased, sold, or held" ADS at any time during the period from March 10, 2021, to May 5, 2021 (the date the Merger closed).  This definition extends to "any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees."

(3) The Court appoints Monteverde & Associates PC and Kahn Swick & Foti LLC as Lead Counsel.

(4) The Court appoints Kurt Ziegler and Daniel Brady as Class Representatives.

(5) The Court approve Rust Consulting, LLC as Claims Administrator.

(6) The Court preliminarily approves the Stipulation of Settlement Agreement and the terms and conditions of settlement set forth therein, subject to further consideration at the Fairness Hearing.

(7) The Court will hold the Fairness Hearing on December 11, 2023, at 11:00 a.m., in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, 221-333 West Broadway, San Diego, CA 92101, for the following purposes:

    a. finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, and thus whether the claims of the Class should be certified for purposes of effectuating the settlement;

b.  determining whether the proposed settlement of the action on the terms and conditions provided for in the Stipulation of Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

c.  considering any motion of Lead Counsel for an award of attorneys' fees and costs;

d.  considering any motion of Lead Plaintiffs for a class representative service payment;

e.  considering whether the releases by Class Members as set forth in the Settlement Agreement should be provided; and

f.  ruling upon such other matters as the Court may deem just and appropriate.

(8)  Any motion in support of the settlement and any motion for an award of attorneys' fees and costs or Lead Plaintiffs' service awards must be filed with the Court no later than the dates specified below.  Lead Counsel must submit their billing records with any fee motion.  Any opposition must be filed no later than fourteen days after the motion is filed, and any reply must be filed no later than twenty-one days after the motion is filed.  All other deadlines in the action are stayed pending the Fairness Hearing.

(9)  Lead Plaintiffs' motion for final approval of the settlement shall include an analysis of the maximum value of the Class's claims and the Settlement Amount proposed.

(10)   Any motion of Lead Plaintiffs' for a class representative service payment must include an explanation of why they are entitled to a service payment in the amount requested.

(11)   The Court approves the form of the "Notice of Pendency and Proposed Settlement of Class Action" ("Notice") (Ex. A-1 to Bower Decl., ECF No. 37-3) and directs the parties and the Settlement Administrator to carry out their obligations under this order and the Stipulation of Settlement Agreement. The

21cv1019

Court authorizes the mailing of the Notice to the Class Members by the deadline below.

(12)   The Court incorporates the procedures for requesting exclusion from the settlement and objecting to the settlement as set forth in the Stipulation of Settlement Agreement and the Notice.

(13)   The Court specifies deadlines for the settlement and approval process as follows:

| Deadline | Event |
|---|---|
| September 7, 2023 | Written Notice mailed to the Settlement Class ("Notice Date") |
| September 18, 2023 | Summary Notice published |
| November 6, 2023 | Deadline for filing briefs in support of the Settlement, certification of the Settlement Class, Plan of Allocation, request for class representative service payment, or request for an award of attorney's fees and expenses |
| November 20, 2023 | Deadline for requesting exclusion from the Settlement Class and objecting to the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses |
| December 4, 2023 | File declaration confirming mailing and publishing Notice and Summary Notice |
| December 4, 2023 | Reply papers in support of the Settlement, Plan of Allocation, request for class representative service |

21cv1019

| | payment, or request for an award of attorneys' fees and expenses |
|---|---|
| December 11, 2023, at 11:00 a.m. | Fairness Hearing |
| January 8, 2024 | Last day for submitting Proof of Claim and Release forms |

**IT IS SO ORDERED.**

**DATED: July 28, 2023**

Hon. Cynthia Bashant
United States District Judge

- 22 -