1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18

| | |
|---|---|
| KURT ZIEGLER and DANIEL BRADY, Individually and on Behalf of All Others Similarly Situated,<br><br>                            Plaintiffs,<br>     v.<br>GW PHARMACEUTICALS, PLC, JUSTIN GOVER, GEOFFREY GUY, CABOT BROWN, DAVID GRYSKA, CATHERINE MACKEY, JAMES NOBEL, ALICIA SECOR and LORD WILLIAM WALDEGRAVE,<br><br>                            Defendants. | Case No. 21-cv-1019-BAS-MSB<br><br>**AMENDED ORDER GRANTING FINAL APPROVAL AND DISMISSING CASE WITH PREJUDICE**<br>**(ECF Nos. 47, 48)** |

19
20
21
22

Now pending before the Court is a Motion for Final Approval of a class action settlement.  (ECF No. 47.)  Having reviewed the briefing and had the benefit of oral argument on December 11, 2023, the Court **GRANTS** Lead Plaintiffs' Motion for Final Approval of the proposed class action.

23

### I.    BACKGROUND

24
25
26

The factual and procedural background of this action is discussed in detail in the Court's Preliminary Approval Order and is incorporated by reference here.  (ECF No. 44 at 1:26–3:9.)

27
28

## II.   SETTLEMENT OVERVIEW

Although the Court also previously described the Settlement in its Preliminary Approval Order, the Court recounts its key aspects here.

<u>Class definition</u>.  The Settlement Class is defined as follows:

> all record holders and all beneficial holders of GW American Depositary Shares ("ADSs") who purchased, sold, or held such ADSs at any time during the period from and including March 10, 2021, the record date for voting on the Merger, through and including May 5, 2021, the date the Merger closed, including any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees.  Excluded from the Settlement Class are (i) Defendants; (ii) members of the immediate families of each Defendant; (iii) GW's subsidiaries and affiliates; (iv) any entity in which any defendant has a controlling interest; (v) the legal representatives, heirs, successors, administrators, executors, and assigns of each defendant, in their capacity as such; and (vi) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

(Settlement Agreement, ECF No. 47-3 at 11:4–15.)  All Settlement Class Members who have not opted out of the Settlement are bound by the release set forth in the Settlement Agreement.  (*Id.* at 13:2–23.)  No objections to the settlement have been received and only four class members have submitted a request for exclusion.  (ECF No. 47-1 at 19:4–6; ECF No. 47-2 ¶ 12.)

<u>Settlement amount</u>.   The Settlement Agreement requires Defendant GW Pharmaceuticals ("GW") to establish a Settlement Fund of $7,750,000 to be allocated on a pro rata basis, based on the number of GW ADSs Settlement Class Members each held, to Settlement Class Members minus any Court-approved deductions and expenses (including attorneys' fees, litigation costs, and individual service awards for lead plaintiffs Ziegler and Brady).  (*Id.* at 1:13–18, 23:24–26.)  Class Counsel seek an award of attorneys' fees in the amount of $2,583,333.31 plus reimbursement of Lead Counsel's costs and expenses in the amount of $33,513.97.  (ECF No. 48-1 at 1:12–13.)  The total amount for attorneys'

fees and costs requested is $2,616,847.28.  Finally, the lead plaintiffs seek service awards for serving as class representatives pursuant to 15 U.S.C. § 78u-4(a)(4).  (ECF No. 48-11 ¶ 2; ECF No. 48-12 ¶ 2.)  Both Ziegler and Brady seek $5,000 each for the approximately 30 hours dedicated to this action, which is presumptively reasonable.

If all holders of the approximately 30,723,630 ADSs in the Settlement Class submitted a valid and timely Proof of Claim and Release, the average distribution will be ~$0.25 per ADS owned, prior to fees and costs.  (ECF No. 47-1 at 24:19–23.)

Notice.  Pursuant to the Preliminary Approval Order, the Claims Administrator mailed the Notice by the Notice Date to all record holders and beneficial holders of GW ADSs who purchased, sold, or held ADSs at any time during the Settlement Class Period and also posted the Notice on the settlement website at www.gwsecuritieslitigation.com.  (ECF No. 47-2 ¶ 11.)   Nearly 30,000 copies of the notice were mailed to potential Settlement Class Members and nominees.  (*Id.* ¶ 12.)  In addition, Lead Counsel published a Summary Notice via *PRNewswire*.  (*Id.* ¶ 11.)

Defendants also timely provided Class Action Fairness Act ("CAFA") notice on March 28, 2023.  (ECF No. 47-6, Ex. 4 ¶ 4.)  Accordingly, the CAFA notice requirements have been satisfied pursuant to 28 U.S.C. § 1715.

Distribution of the settlement fund.  GW will deposit the Settlement Amount into the Escrow Account, which is to be maintained by the Escrow Agent.  (ECF No. 47-3 at ¶ 2.1.)  The Escrow Agent is in charge of managing and investing the Settlement Fund, but only within the bounds of the Settlement Agreement.  (*Id.* at ¶¶ 2.3–2.8.)   The Escrow Agent is authorized to pay up to $300,000 in connection with providing notice to Class Members.  (*Id.* at ¶ 2.7.)   A Claims Administrator is in charge of calculating and distributing payments from the Net Settlement Fund to the Class Members.  (*Id.* at ¶ 5.1.)  The Settlement Fund will be distributed in the following order: (1) Notice and Administration Costs; (2) Taxes and Tax Expenses; (3) Lead Counsel's Fee and Expense Award and Lead Plaintiff's Service Awards; and (4) Net Settlement Fund to Authorized Claimants.  (ECF No. 47-1 at 23:4–7.)

Authorized Claimants must submit a Proof of Claim and Release by the date specified in the Notice. If the Proofs of Claim are submitted late, Lead Counsel has the discretion to accept those claims so long as they do not "materially delay distribution" of payment to Authorized Claimants. (*Id.* at 22:22–24.) The Claims Administrator reviews each Proof of Claim and Release, rejecting those that do not meet submission requirements so long as the Claims Administrator has contacted the Claimant to attempt to remedy any curable deficiencies and notify them they have a right for the Court to review any rejection. (*Id.* at 22:25–23:1.) No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. (ECF No. 47-3 at 24:1–5.)

Scope of release. The class releases any and all claims that could have been asserted or could be asserted in the future against Defendants, or Jazz Pharmaceuticals, and any and all of their related parties. (*Id.* at 9:24–10:20.) These claims are considered released upon the effective date of the Settlement Agreement "regardless of whether a Settlement Class Member executes and delivers a Proof of Claim and Release." (*Id.* at 19:24–10:20.)

Objections. In accordance with the Settlement Agreement, the Settlement Administrator provided the notice required under CAFA to the attorneys general of 50 states, as well as the U.S. territories and the District of Columbia's Corporate Counsel. (ECF No. 48-6 ¶ 4.) No government entity has objected to the settlement or sought to intervene. Further, no class member objections to the settlement have been received and only four class members have submitted a request for exclusion. (ECF No. 47-1 at 19:4–6; ECF No. 47-2 ¶ 12; ECF No. 52.)

## III.   ANALYSIS

The approval of a class-action settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a

final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed-upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## A. Final Approval of the Settlement Agreement

To grant final approval, the Court must find that the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), to post-class action settlements as well as those settled before certification). A class action may not be

settled without court approval. Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992) (citation omitted).

### 1.   Certification of the Settlement Class

The Federal Rules of Civil Procedure describe four preliminary requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). If these are satisfied, the court must then examine whether the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–47 (2011).

This Court preliminarily certified the Settlement Class in its Order Granting Preliminary Approval. (ECF No. 44.) Since then, no material facts regarding any of the factors for class certification have changed. Accordingly, the Court finds final certification of the Settlement Class is warranted and **GRANTS** class certification for the purposes of this settlement.

### 2.   The Fairness Factors

#### i.   Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The first and second *Churchill* factors require courts to consider "the strength of the [P]laintiffs' case on the merits balanced against the amount offered in the settlement" and the risks of further litigation. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526 (citations omitted). There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, courts' assessments of the likelihood of success are "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citation omitted). "In reality,

- 6 -

parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citation omitted).

Plaintiffs admit that the Private Securities Litigation Reform Act ("PSLRA") throws up "significant roadblocks to recovery" through its heightened pleading requirement; and they admit they believed Defendants had a good chance of assailing Plaintiffs' initial claims in a motion to dismiss. (ECF No. 47-1 at 8:25–9:8.) They also received advice from the mediator in the mediator's recommendation that "Defendants' Motion to Dismiss presents a *significant hurdle* to Lead Plaintiffs' and Class Members' recovery." (*Id.* at 9:12–14.) Further, given the complex nature of the case in its accompanying factual and legal issues, Plaintiffs would have needed to expend significant resources going through extensive expert discovery and testimony. (*Id.* at 9:25–10:2.) Moreover, taking a case through to trial presents the very real risk that the Settlement Class would have obtained recovery less than the Settlement Amount or no recovery at all. (*Id.* at 10:10–12.)

It follows that this factor weighs in favor of granting final approval of the settlement.

### ii.    Risk of Maintaining Class Action Status Throughout Trial

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.

Plaintiffs allege that Defendants, were litigation to continue, would have contested class certification as "defendants in federal merger litigation regularly contest class certification." (ECF No. 47-1 at 11:16–20.) Were Defendants to have succeeded, the "case would have effectively been over." (*Id.* at 11:24.) Accordingly, this factor also weighs in favor of granting final approval.

### iii.    Settlement Amount

The fourth fairness factor, the amount of recovery offered, favors final approval of the settlement.   When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomms.*, 221 F.R.D. at 527 (citation omitted).   "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

The Settlement Amount has the advantage of offering a real and substantial benefit to the class now, rather than rolling the dice through motions to dismiss, motions for summary judgment, and trial.   The Settlement Amount represents ~1% of the total maximum potential damages estimated by Plaintiff's expert, though.   (ECF No. 47-1 at 12:11–13.)   Plaintiffs assert, however, that this is "an excellent result in light of the facts *of this case*."   (*Id.* at 12:19–20.)   The PSLRA creates a high burden and frequently results in the granting of motions to dismiss; Defendants persuasively argued that the hypothetical $600 million recovery was a "pie in the sky value" through successful attacks on Plaintiffs' reliance on analyst reports, pointing out that they were "speculative and insufficient"; and Plaintiffs' damages theory was based on a set of projections that were called into question by subsequent guidance and the discontinuation of a key program.   (*Id.* at 12:20–13:19.) Plaintiffs faced significant obstacles in winning the total maximum potential damages estimated by their expert.

Moreover, compared to other merger litigation under the PSLRA, this Settlement Amount is very much in line.   Two recent post-motion to dismiss cases (the instant action is pre-motion to dismiss) reached a $7.5 million settlement, Decl. of Van in Supp. of Mot. for Prelim. Settlement Approval, *Jian Zhou v. Faraday Future Intelligent Electric Inc.*, (C.D. Cal. Oct. 5, 2023) (No. 21-cv-9914), ECF No. 104-1 at 57 (based on a recovery of $0.07 per damaged share), and a $9.75 million settlement, Decl. of Villegas in Supp. of Motion for Prelim. Settlement Approval, *In Re:Mindbody Inc. Secs. Litig.*, (No. 19-cv-

8331) (S.D.N.Y. Mar. 3, 2022), ECF No. 118-1 at 60 (based on a recovery of approximately $0.26 per damaged share).

Therefore, this factor also weighs in favor of approval.

### iv. Extent of Discovery Completed and Stage of Proceedings

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *Id.* at 527 (citations omitted). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (citations omitted).

Parties had not yet begun formal discovery when they reached the settlement before the Court today. However, Lead Counsel had already engaged in "extensive investigation, research, and analysis of the claims" and had received information from the Defendants during mediation. (ECF No. 47-1 at 16:10–17:11.) Lead Counsel had also engaged an expert to assist in assessing loss causation and damages and engaged in extensive briefing during mediation. (*Id.*) Because the parties had not yet commenced formal discovery, though, this factor weighs against final approval of the Settlement Agreement.

### v. Experience and Views of Counsel

"The Ninth Circuit recognizes that parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Knapp*, 283 F. Supp. 3d at 833 (citations omitted). Thus, courts grant "great weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528).

Monteverde & Associates PC is a national class-action firm that focuses on shareholder class actions. The firm has significant experience litigating mergers and

acquisitions and securities class actions as evidenced by its firm resume.  (ECF No. 48-9 at 2.)  Kahn Swick & Foti, LLC ("KSF") is a firm also specializing in class actions in various areas, including in shareholder derivative litigation, as evidenced by its firm resume.  (ECF No. 48-10, Ex. 8 at 333–42.)  The KSF partner assigned to this action is a specialist in securities litigation involving mergers and acquisitions.  (*Id.* at 353–54.)

Based on their evaluation of the factual and legal issues in this case, Lead Counsel believe "that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class . . . . and is in the best interests of the Settlement Class, and that the Settlement provided for herein is fair, reasonable, and adequate." (ECF No. 47-3 at 5:17–22.)  Accordingly, giving the appropriate weight to Lead Counsel's recommendation, the Court concludes this factor also weighs in favor of final approval.

### vi.    Presence of a Government Participant

There is no governmental participant in this case, so the factor is neutral.  *Allen v. Similasan Corp.*, No. 12-cv-00376-BAS-JLB, 2017 WL 1346404, at *5 (S.D. Cal. Apr. 12, 2017).

### vii.    Reaction of Class Members

Where no class member objects to a proposed settlement, it raises a "strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms*, 221 F.R.D. at 529.

Here, no objections to the settlement have been received and only four class members have submitted a request for exclusion.  (ECF No. 47-1 at 19:4–6; ECF No. 47-2 ¶ 12, ECF No. 52.)  The Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (citation omitted).  Therefore, this factor also weighs in favor of final approval

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the class action settlement.

### 3.     The *Bluetooth* Factors

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations and not of fraud and collusion.  *In re Bluetooth*, 654 F.3d at 947.  In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* (citation omitted).  The Ninth Circuit has identified three such signs:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel is amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.*  Essentially, courts evaluate whether plaintiffs' attorneys are treating the class as a cash cow rather than real clients with real interests and goals.

For the first *Bluetooth* factor, the Court compares the payout to the class (actual and expected) to class counsel's unopposed claim for fees.  *See Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011).  The gross settlement amount is $7.75 million, and Class Counsel seeks $2,583,333.31 in attorneys' fees plus reimbursement of Lead Counsel's costs and expenses in the amount of $33,513.97.  (ECF No. 48-1 at 1:12–13.)  The fees alone represent 33.3 percent of the Settlement Amount.  This ratio taken on its own may be a sign of collusion.  *See In re Bluetooth*, 654 F.3d at 942.  However, given the specialized nature of the action, the fact that Class Counsel took this case on contingency, and the impressive total amount of the settlement, it does not raise a concern regarding collusion.

21cv1019

The second warning sign—a "clear sailing" provision—is not present here, as noted in the Preliminary Approval Order. (ECF No. 44 at 13:26–27.) Likewise, the third warning sign—whether the parties have arranged for fees not awarded to the class to revert to defendant rather than be added to the settlement fund, *see In re Bluetooth*, 654 F.3d at 949—is not present here. The Settlement Agreement is non-reversionary—all of the funds will be distributed to Authorized Claimants. (ECF No. 47-3 at ¶ 5.7.)

Notwithstanding the existence of one of the three *Bluetooth* factors, the Court concludes the Settlement Agreement did not result from, nor was it influenced by, collusion. Instead, the Settlement Agreement adequately satisfies the Settlement Class Members' claims. As explained below, the amount of fees sought is reasonable as well.

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. 361 F.3d 566; 654 F.3d 935. The Court is therefore satisfied that the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. There are no objections to address. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

### B.  Motion for Attorneys' Fees, Costs, and Individual Service Award

Rule 23 permits a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)(2)). In addition, the PSLRA provides for reasonable attorneys' fees and costs as determined by the court. 15 U.S.C. § 78u-4(a)(6).

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Cf. Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable,

even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. The Ninth Circuit has approved two methods of evaluating attorneys' fees in cases where the amount of the attorneys' fee award is taken from the common fund set-aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (citation omitted).

### i.     Attorneys' Fees

Class Counsel seek an award of attorneys' fees in the amount of $2,583,333.31 plus reimbursement of Lead Counsel's costs and expenses in the amount of $33,513.97. (ECF No. 48-1 at 1:12–13.) The total amount requested is $2,616,847.28. The attorneys' fees alone represent one-third or 33.3 percent of the Settlement Fund. The attorneys' fees plus costs represent 33.76 percent of the Settlement Fund.

### a.     Lodestar Method

The lodestar method "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir. of Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), as am. on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987).

Class Counsel's total lodestar is $901,342.50. (ECF No. 48-1 at 13:24–26.) The requested fee award constitutes a 2.87 multiplier of the lodestar, which is well within the acceptable range in complex class action cases.[1] *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal. Feb. 6, 2013) (stating "[m]ultipliers of 1 to 4 are commonly found to be appropriate in complex class action

---

[1] The multiplier is achieved by dividing the attorneys' fees requested ($2,583,333.31) by the lodestar ($901,342.50).

cases"); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-cv-00468-BAS-BGS, 2021 WL 1889734, at *3  (S.D. Cal. May 11, 2021) (finding a "lodestar of 1.675 is not unreasonable or out of the realm of multipliers other courts have awarded") (citing *Vizcaino*, 290 F.3d at 1051 (upholding a lodestar multiplier of 3.65)).

### 1.    Reasonable Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210–11 (citations omitted).  The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).  In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases.  *See Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012).

Here, Monteverde & Associates billed hourly rates as follows: $975 for a managing partner, $850 for a senior associate, $750 for of counsels, $475–575 for associates, and $350 for a law clerk pending admission to the New York Bar.  (ECF No. 48-2 at 13:14–25.)  The managing partner billed 305.1 hours, the senior associate billed 221.8 hours, the two of counsels billed a combined 72.3 hours, the associates billed a combined 201 hours, and the law clerk billed 13.5 hours.  (*Id.*)  Class Counsel's other firm, KSF, billed as follows: a partner billed 208.7 hours at a rate of $900 per hour, the most expensive associate attorneys billed at $725 an hour, the least expensive associate attorneys billed at $525 an hour, the staff attorneys billed at $350 an hour, and the support staff billed at $275 an hour. (ECF No. 48-19 ¶ 5.)

The firm of Blood Hurst & O'Reardon, LLP acted as "liaison counsel" for the Lead Plaintiffs in the Action.  (ECF No. 48-20 ¶ 1.)  The firm accrued 7.5 hours on the instant action, "representing a total lodestar of $4,855."  (*Id.* ¶ 5.)  A partner billed 7.2 hours at a rate of $660 per hour and a staff member billed 0.25 hours at a rate of $280 per hour.  (*Id.*)

- 14 -

1    These hourly rates are generally in line with rates prevailing in this community for

2    similar services by lawyers of reasonably comparable skill, experience, and reputation.

3    *See, e.g.*, *Soler v. Cnty. of San Diego*, No. 14cv2470-MMA (RBB), 2021 U.S. Dist. LEXIS

4    114484, *15 (S.D. Cal. Jun. 18, 2021) (collecting cases and noting that "courts in this

5    District have awarded hourly rates for work performed in civil cases by attorneys with

6    significant experience anywhere in the range of $550 per hour to more than $1000 per

7    hour"); *Herring Networks, Inc. v. Maddow*, No. 19-cv-1713-BAS-AHG, 2021 U.S. Dist.

8    LEXIS 23163, *18–21 (S.D. Cal. Feb. 5, 2021) (collecting cases awarding fees based on

9    hourly rates in the range of $295 to $943 and concluding that "reasonable rates in this

10   district for those of comparable skill, experience, and reputation" justified rates between

11   $470 to $1,150); *Khoja v. Orexigen Therapeutics*, No. 15-cv-00540-JLS-AGS, 2021 U.S.

12   Dist. LEXIS 230105, at *31 (S.D. Cal. Nov. 30, 2021) (holding the lodestar cross-check

13   (which included KSF partner rates of $925-$1,100) supported a fee representing 33.3

14   percent of the common fund).

15   The Court thus concludes that the hourly rates charged by Class Counsel, and the

16   firms who associated with Class Counsel for appeal, are reasonable.

17                          **2.      Reasonable Hours Expended**

18   As to the number of hours billed, they must equal the number of hours that can

19   reasonably be billed to a private client.  *Gonzalez v. City of Maywood*, 729 F.3d 1196,

20   1202–03 (9th Cir. 2013).  Thus, the court should only award fees based on "the number of

21   hours reasonably expended on the litigation" and should exclude "hours that are excessive,

22   redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

23   "There is no precise rule or formula for making these determinations," and the court

24   "necessarily has discretion in making this equitable judgment." *Id.* at 436–37.

25   Class Counsel submitted detailed records of the time expended in connection with

26   this matter, derived from contemporaneous billing records.  (ECF No. 48-18; ECF No. 48-

27   19, Ex. A;  ECF No. 48-20, Ex. A.)  Upon review of the records, the Court determines the

28

number of hours expended was reasonable.  This work could reasonably be billed to a private, hourly fee client and is therefore compensable.  *Gonzalez*, 729 F.3d at 1202–03.

### b.     Percentage of the Fund

"Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  In the Ninth Circuit, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Lead Counsel's request for $2,583,333.31 or 33.33 percent of the Settlement Fund is higher than the benchmark for a reasonable award.  The Court nevertheless finds it appropriate under the circumstances.  First, the overall result and benefit to the class from the litigation is key to granting a fee award, *see In re Bluetooth*, 654 F.3d at 942, and as discussed above, the result achieved for the class is significant. Class Counsel secured a settlement of $7,750,000 which is significant in a pre-motion to dismiss merger settlement, *see supra* Section III.A.2.iii. (citation omitted).

Second, the skill required and quality of work performed likewise supports the fee award sought here. This result would not have been possible but for Class Counsel's expertise and sustained efforts.

Third, the contingent nature of this action also supports the fee award here.  Class Counsel have litigated this case since 2021 on a contingency basis assuming significant risk of no recovery at all.

Fourth, the lack of any class member objections also supports the fee award.  *See Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCx), 2017 WL 9614818,

at *5 (C.D. Cal. Oct. 24, 2017) ("The presence or absence of objections from the class is also a factor in determining the proper fee award.").

Finally, the lodestar multiplier of 2.87 is within the acceptable range of multipliers when it comes to complex class action cases such as these.  *See, e.g.*, *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal. Feb. 6, 2013); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-cv-00468-BAS-BGS, 2021 WL 1889734, at *3  (S.D. Cal. May 11, 2021).

The percentage-of-recovery analysis therefore does not render the requested fees unreasonable.  *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, at *9 (N.D. Cal. June 26, 2017).

The Court thus approves Class Counsel's request for $2,583,333.31 in attorneys' fees.

### ii.    Litigation Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).   Lead Counsel requests  $33,513.97 in costs, which includes the costs of experts, mediation, court filing and service fees, and the settlement summary notice.  (*Id.* ¶¶ 28, 30.)  Lead Counsel "have excluded from its expense request travel and lodging expenses that [they] incurred in prosecuting the Action." (*Id.* ¶ 28.)  These costs are all well documented and reasonable. Accordingly, the Court awards $33,513.97 in costs.

### iii.    Individual Service Awards

Finally, the lead plaintiffs seek service awards for serving as class representatives pursuant to 15 U.S.C. § 78u-4(a)(4).  (ECF No. 48-11 ¶ 2; ECF No. 48-12 ¶ 2.)  A court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Both Ziegler and Brady seek $5,000 each for the approximately 30 hours they each dedicated to this action, which is presumptively reasonable.  *See, e.g.*,

*Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) (noting that "[s]ervice awards as high as $5,000 are presumptively reasonable" in that district and collecting cases holding the same); *In re Infospace, Inc. Secs. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (approving $5,000 and $6,600 service awards). The Court thus concludes that the requested $5,000 service award for each lead plaintiff is reasonable and appropriate in this case.

## IV.  CONCLUSION

For the reasons stated both in this order as well as the Court's Preliminary Approval Order, the Court (1) **GRANTS** Plaintiffs' Motion for Final Approval of Class Settlement (ECF No. 47); and (2) **GRANTS** Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 48).

Accordingly, the Court also **ORDERS** as follows:

1. <u>Incorporation of Other Documents</u>.  The Settlement Agreement dated March 16, 2023, including its exhibits, and the definitions of words and terms contained therein are incorporated by reference in this Order.  (ECF No. 37-3, Ex.1.)  The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.  (ECF No. 44.)

2. <u>Jurisdiction</u>.  This Court has jurisdiction over the subject matter of this Action and over the Parties, including all members of the following Settlement Class certified for settlement purposes in this Order:  all record holders and all beneficial holders of GW American Depositary Shares ("ADSs") who purchased, sold, or held such ADSs at any time during the period from and including March 10, 2021, the record date for voting on the Merger, through and including May 5, 2021, the date the Merger closed, including any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees.  Excluded from the Settlement Class are (i) Defendants; (ii) members of the immediate families of each Defendant; (iii) GW's subsidiaries and affiliates; (iv) any entity in which any defendant has a controlling interest; (v) the legal representatives, heirs, successors, administrators,

executors, and assigns of each defendant, in their capacity as such; and (vi) any persons or entities who properly excluded themselves by filing a valid and timely request for exclusion.

3.     Class Certification.  For purposes of settlement only, the Settlement Class, as defined in the Settlement Agreement and above, meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b).  Accordingly, for purposes of settlement, the Court finally certifies the Settlement Class.

4.     Adequate Representation.  The Class Representatives and Class Counsel have adequately represented the Settlement Class in accordance with Federal Rule of Civil Procedure 23(e)(2)(A).

5.     Arms-Length Negotiations.  The Settlement Agreement is the product of arms-length settlement negotiations between the Plaintiffs and Class Counsel, on the one hand, and Defendants and their counsel, on the other, in accordance with Federal Rule of Civil Procedure 23(e)(2)(B).

6.     Class Notice.  The Class Notice and claims submission procedures set forth in the Settlement Agreement, and the Notice Plan, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order.  *See* Fed. R. Civ. P. 23(e)(1).

7.     CAFA Notice.  The notice provided by the Class Administrator to the appropriate State and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

8.     Settlement Class Response.  A total of four (4) Settlement Class Members submitted a timely and proper Request for Exclusion, as reported in the declaration of the Claims Administrator submitted to this Court.  The Court hereby orders that the individuals listed by the Claims Administrator as having submitted a valid Request for Exclusion are

excluded from the Settlement Class. The Settlement Agreement will not bind those individuals, and neither will they be entitled to any of its benefits. No Settlement Class Members timely filed an objection with this Court.

9. <u>Final Settlement Approval</u>. The Court hereby finally approves the Settlement Agreement, the exhibits, and the Settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure and directs its consummation pursuant to its terms and conditions.

10. <u>Attorneys' Fees and Costs; Service Awards</u>. The Court approves Class Counsel's application for attorneys' fees and costs in the amount of $2,583,333.31 in fees and $33,513.97 in costs; and approves service awards of $5,000 each for Plaintiffs Kurt Ziegler and Daniel Brady. The Settlement Agreement provides for Class Counsel's Fee Award to be paid before the time to appeal this Order has expired. If the Fee Award is voided or reduced on appeal, either directly or as a result of the final approval of the Settlement as a whole being vacated, overturned, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to the Settlement Fund the affected amount of the attorneys' fees and costs paid to Class Counsel, in an amount proportionate to the distribution among Class Counsel's firms, in accordance with the directions in the Settlement Agreement. By receiving any payments pursuant to the Settlement Agreement, each firm and their shareholders, members, and/or partners submit to the jurisdiction of this Court for the enforcement of the reimbursement obligation set forth herein and in the Settlement Agreement. If Class Counsel fails to timely repay the attorneys' fees and costs that are owed under this provision, the Court shall be entitled, upon application of Defendant(s) and notice to Class Counsel, to summarily issue orders, including but not limited to judgments and attachment orders against each of Class Counsel.

21cv1019

11.     <u>Dismissal</u>.  The Court hereby **DISMISSES WITH PREJUDICE**, without costs to any party, except as expressly provided for in the Settlement Agreement, the instant action, as defined in the Settlement Agreement.

12.     <u>Release</u>.  Upon the Effective Date as defined in the Settlement Agreement, the Plaintiffs and each one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released Claims.

13.     <u>Injunction Against Released Claims</u>.  Each and every Settlement Class Member, and any person actually or purportedly acting on behalf of any Settlement Class Member(s), is hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties.  The permanent bar and injunction are necessary to protect and effectuate the Settlement Agreement, this Final Order of Dismissal, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

14.     <u>No Admission of Liability</u>.  The Settlement Agreement and any and all negotiations, documents, and discussions associated with it will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing by Defendant, or the truth of any of the claims.  Evidence relating to the Agreement will not be discoverable or admissible, directly or indirectly, in any way, whether in this Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Settlement Agreement, the Preliminary Approval Order, or this Order.

15.     <u>Findings for Purposes of Settlement Only</u>.  The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in any other action.

21cv1019

16.     <u>Effect of Termination or Reversal</u>.  If for any reason the Settlement terminates or Final Approval is reversed or vacated, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendants or the Class Representatives to assert any right or position that could have been asserted if the Settlement Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary.  In such an event, the certification of the Settlement Class will be deemed vacated.  The certification of the Settlement Class for settlement purposes will not be considered as a factor in connection with any subsequent class certification issues.

17.     <u>Injunctive relief</u>.  By attaching the Settlement Agreement as an exhibit and incorporating its terms herein, the Court determines that this Final Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

18.     <u>Retention of Jurisdiction</u>.  Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of the Judgment and the Settlement Agreement and all matters ancillary to the same.

19.     <u>Entry of Judgment</u>.  The Clerk of the Court is directed to enter an Amended Judgment.

**IT IS SO ORDERED.**


**DATED: April 3, 2024**

Hon. Cynthia Bashant
United States District Judge

21cv1019